## CAPITAL ACADEMY CHARTER SCHOOL

v.

## HARRISBURG SCHOOL DISTRICT and Harrisburg School District Board of Control, Appellants.

Commonwealth Court of Pennsylvania.

Argued Sept. 4, 2007.

Decided Oct. 15, 2007.

Michael I. Levin, Huntingdon Valley, for appellants.

Mark Morford, Exton, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

The Harrisburg School District and Harrisburg School District Board of Control (collectively, the District) appeal from the order of the Court of Common Pleas of Dauphin County (trial court) which concluded the Capital Academy Charter School's (Capital) signature petition (Petition) provided the authority necessary for Capital to appeal to the State Charter School Appeal Board (CAB) and challenge the District's denial of Capital's charter school application.

On November 15, 2005, Capital submitted a charter school application to the District pursuant to the Charter School Law (CSL).[1] After two public hearings held December 20, 2005, and January 13, 2006, the District denied Capital's application by Order dated February 21, 2006. Reproduced Record (R.R.) at 4a, 8a. Capital then obtained numerous signatures in an effort to become eligible to petition for an appeal of the District's Order to the CAB, as provided by Section 1717–A(f) of the CSL, 24 P.S. § 17–1717–A(f).[2]

Capital, with the belief they had obtained more than the 1,000 valid signatures

---

1. Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1701–A—17–1751–A. The CSL was added to the Public School Code, Act of March 10, 1949, P.L. 30, *as amended* 24 P.S. §§ 1–101–A et seq.

2. Section 1717–A(f) of the CSL provides that in order to petition for appeal to the Board, "the applicant must obtain the signatures of

at least two percentum of the residents of the school district or of one thousand (1,000) residents, whichever is less." The signatures must be obtained within sixty days after the denial of the charter application by the school district. *Id.* Further, Section 1717–A(i)(4) of the CSL provides:

The petition must have appended thereto the affidavit of some person, not necessarily

required to appeal under Section 1717–A(i)(2), 24 P.S. § 17–1717–A(i)(2), presented to the trial court the Petition on May 10, 2006, that consisted of 1,176 completed signature lines. R.R. at 184a–250a.

■ The trial court found that there were enough valid signatures to authorize an appeal to the CAB. The District now contests the trial court's signature determination.[3] This Court first reviews the District's challenges to the trial court's conclusions of law, then the trial court's findings of fact.

## I. Facial Validity of Petition Form

■ The District challenges the Petition as facially invalid because residents who were eighteen years of age signed the Petition, in violation of the statutory language that only those "over eighteen" be permitted to do so. Section 1717–A(i)(2) of the CSL, 24 P.S. § 17–1717–A(i)(2). Specifically, the District argues that the form promulgated by the Pennsylvania Department of Education (PDE), form PDE–377, is an erroneous interpretation of the statute because it indicates that a person "eighteen (18) years of age or older" may sign, in contravention of the statutory lan-

guage that a person must be "over eighteen" to sign. The District contends that this interpretation renders the form facially invalid because a person who is eighteen but not yet nineteen is forbidden from signing by the language of the statute. This argument is meritless.

■ The meaning of a statute is a question of law, though courts traditionally accord some deference to the interpretation of a statute by an agency charged with the administration of that statute. *Gilmour Manufacturing Co. v. Commonwealth,* 717 A.2d 619 (Pa.Cmwlth.1998). When convinced that the interpretation adopted by the agency is unwise or violative of legislative intent, this Court is free to disregard that interpretation. *Id.* The relevant question is whether "eighteen (18) years of age or older" is violative of the General Assembly's intent.

■ The Legislature drafted Section 1717–A(i)(2) of the CSL, 24 P.S. § 17–1717–A(i)(2), to say "over eighteen." Some notable and similarly age-restrictive statutes have been formulated somewhat differently and are not completely helpful.[4]

---

a signer, setting forth all of the following: (i) That the affiant is a resident of the school district referred to in the petition. (ii) The affiant's residence, giving city, borough or township, with street numbers, if any. (iii) That the signers signed with full knowledge of the purpose of the petition. (iv) That the signers' respective residences are correctly stated in the petition. (v) That the signers all reside in the school district. (vi) That each signer signed on the date set forth opposite signer's name. (vii) That to the best of the affiant's knowledge and belief, the signers are residents of the school district.

The applicant must then present the signatures to the court of common pleas of the county in which the charter school would be situated. § 1717–A(i)(5).

3. Because the issue presented is the interpretation of a statute and therefore a matter of

law, this Court's review is plenary. *Tomaskevitch v. Specialty Records Corp.,* 717 A.2d 30 (Pa.Cmwlth.1998) ("In *examining questions of law,* our review is plenary.") (emphasis added) (citing *Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995)). The District indicated in its Statement of the Scope and Standard of Review that "the scope of review is plenary," omitting the crucial "examining questions of law" language. This Court's review of the fact-based questions is not plenary. *See infra.*

4. For example, the Vehicle Code, 75 Pa.C.S. §§ 101–9805, states: "[t]he department may issue a junior driver's license to a person *16 or 17 years of age* (4)27" 75 Pa.C.S.A. § 1503(c) (emphasis added). The Pennsylvania Election Code states that an eligible voter is one "who will be *at least 18 years of age* on the day of the next election...." 25 Pa.C.S.

Therefore, this Court must engage in statutory interpretation. Statutes should receive a sensible construction and should be construed if possible so that absurdity and mischief may be avoided. 1 Pa.C.S. § 1922; *See Commonwealth v. Allied Building Credits, Inc.*, 123 A.2d 686, 385 Pa. 370 (1956). Further, good sense and practicality must be considered. *Id.*

This Court believes an interpretation of the phrase "over eighteen" by PDE to include someone who has celebrated their eighteenth birthday but has yet to reach the age of nineteen is eminently reasonable and rationally related to the legislative intent. Because this Court accords deference to the administrative agency's interpretation, and because PDE's interpretation is neither unwise nor violative of legislative intent, this Court will not disturb PDE's interpretation of Section 1717–A(i)(2) of the CSL, 24 P.S. § 17–1717–A(i)(2). *Gilmour.* This Court holds that PDE's form, PDE–377, stating "eighteen (18) years of age or older," is not facially invalid.

Even if this Court were to adopt the District's unique interpretation,[5] the District has provided no evidence that any persons older than eighteen but younger than nineteen actually signed the form. The District only points to the fact that those in this allegedly disenfranchised age group may have mistakenly been permitted by the language of the form provided by PDE to do so. The District does not seek to exclude any specific signatures but rather seeks a blanket exclusion of the list based on what the District argues is an inaccurate form. Like the trial court, this Court finds no error in the form.

## II. Affidavit Requirement

■ The District next argues that the Affidavit appended to the Petition did not meet all the requirements of Section 1717–A(i)(4) of the CSL, 24 P.S. § 17–1717–A(i)(4), specifically that the affiant, who according to the CSL must reside in the relevant school district, did not have personal knowledge of the information included with the affidavit. The affiant here, Shahied Keenan (Keenan), was a resident of the school district, but did not personally collect any of the signatures.[6] Five

§ 1301(a) (Act of June 3, 1937, P.L. 1333 *as amended*, 25 P.S. §§ 2600–3591) (emphasis added). A person who, "being *less than 21 years of age*, attempts to purchase, purchases, consumes ... liquor or malted or brewed beverages ..." violates Title 18 of the Pennsylvania Code. 18 Pa.C.S.A. § 6308(a) (emphasis added). *But see* 18 Pa.C.S. § 6314 (applying minimum one-year sentence to those "over 18" convicted of delivery or possession with intent to deliver a controlled substance to a minor); 24 P.S. § 6–679 (stating that "each resident or inhabitant, *over 18* years of age" shall pay a per capita school tax) (emphasis added). If District's argument were to win, District would then be hard-pressed to argue it could collect school taxes from those residents who are eighteen but have yet to celebrate their nineteenth birthday.

5. The District misconstrues the statute and the interpretation of the phrase "over eighteen." Actually, a person who celebrates a birthday is in the next instant over that age. Time creeps along, and one does not jump from age increment to age increment. Rather, from the moment of birth, one progressively becomes older, admittedly reaching milestones along the way, but aging nonetheless. The life of an infant, measured in days, weeks, and months, is illustrative of this concept. The phrase "over eighteen" can only logically be interpreted to mean any person who has celebrated his or her eighteenth birthday, and is at least eighteen.

6. The District challenges affiant's personal knowledge that the signers signed with full knowledge of the petition, that the signers' respective residences were correctly stated, that signers all resided in the District, that the signers signed on the date set forth opposite their respective names, and that to the best of the affiant's belief, the signers were residents of the District.

other persons collected the signatures: Nuri Delen (Delen), Feridun Ayata (Ayata), Mahmut Tanis (Tanis), Sezai Sablak (Sablak), and Ergin Zorlu (Zorlu). However, none of these persons resided in the District and each was, therefore, ineligible to be an affiant. Delen provided the signature sheets to Keenan, and upon information from Delen that the information in the Petition was accurate and true, Keenan signed the Affidavit. R.R. at 30a, 340a.

By its terms, the CSL does not require an affiant to have "personal knowledge." *See* Section 1717–A(i)(4) of the CSL, 24 P.S. § 17–1717–A(i)(4). The District contends that implied in the statute is a requirement that an affiant have personal knowledge of that to which he or she signs, and that such an interpretation is in line with other rules and statutes that expressly require personal knowledge. *See* Pa. R.C.P. No. 1035.4 (relating to motions for summary judgment and stating "[s]upporting and opposing affidavits shall be made on personal knowledge. . . ."). This Court, then, must engage in interpreting the statute to determine whether personal knowledge by an affiant is required in the context of the CSL.

Capital argues that the personal knowledge requirement of the affiant must not be read into Section 1717–A(i)(4) of the CSL, 24 P.S. § 17–1717–A(i)(4).[7] Personal knowledge was not expressly required by the language of the statute, and statutes that require an affiant's personal knowledge state so expressly. The existence of statutory language requiring first hand knowledge in other statutes indicates its

absence here reflects this was not intended by the General Assembly.

Historically, the courts have recognized that the General Assembly understands the importance of such a requirement, and its absence here indicates the Legislature's intent not to require it. *See Williams v. County of Allegheny,* 55 Pa.Cmwlth. 432, 423 A.2d 1097 (1980). Indeed, the District essentially concedes in its own brief that a personal knowledge requirement is only implied by the statute. Appellant's Brief at 11. The thrust of the District's argument is simply that the personal knowledge requirement must be inferred because such a requirement exists in other statutes and that the same standard should apply to every affidavit.

The trial court determined that the affiant satisfied the requirements of the statute if the affiant relied on information from someone with first-hand knowledge of how the signatures were collected.[8] This Court agrees. Requiring personal knowledge by the affiant when no such requirement is set out in the statute would frustrate the purpose of the statute, and that purpose is to demonstrate that public support exists for a charter school in a particular school district, no more and no less. It would be a difficult hurdle indeed for an affiant to have personal knowledge of every signer's true address, a hurdle that was not established by the General Assembly.

For example, an affiant who collects signatures at a public place such as a park, or a place of religious worship, or other gathering area would then have to follow each

---

7. Capital cites Pa.R.C.P. No. 1035.4, and 21 P.S. §§ 451, 453 (relating to the recording of deeds and mortgages) for the proposition that if the General Assembly intended for the statute to require an affiant's personal knowledge, the General Assembly was well aware of

the necessity to specifically put such language in the statute, yet declined to do so.

8. The trial court referred to the portion of the statute at issue here as 24 P.S. § 17–1717–A(h)(i)(4). It is this Court's belief that the correct reading is 24 P.S. § 17–1717–A(i)(4).

signer to his or her home or request the signer to provide proof of residency to ensure that the address was correct. This result creates more problems than it alleviates. To effectuate the purpose of the statute, this Court concludes, as did the trial court, that a lay person under the CSL does not have to execute an affidavit upon personal knowledge, so long as the affiant relied on reasonable information or belief in completing the affidavit. Any other reading would lead to an absurd result, which should be avoided in deference to the canons of statutory interpretation.

## III. Failure to Utilize Cover Sheet

■ Next, the District argues that Capital's failure to utilize the cover sheet of PDE–377 rendered the Petition invalid. Again, we agree with the trial court that this argument is without merit. Signers were given all information required to be given by the CSL, and the CSL does not require that the front page or cover sheet of the form, or indeed any part of the form but the signature page, be presented to a signer. In relevant part, Section 1717–A(i)(3) of the CSL, 24 P.S. § 17–1717–A(i)(3) states only that "[t]here shall be appended to the petition a statement that the local board of directors rejected the petition for a charter school, the names of all applicants for the charter, the date of denial by the board and the proposed location of the charter school." This Court, like the trial court, believes Capital satisfied this requirement.

While Section 1717–A(i)(3) of the CSL, 24 P.S. § 17–1717–A(i)(3) notes that "[a]ll pages shall be bound together," there is no requirement that the binding occur before the signatures are collected. Indeed, there is no requirement in the statute that the signers read any portion of the petition at all, so long as each signed with full knowledge of the petition's purpose. Further, the information on the cover sheet is duplicated, in essence, in the appended statement atop each signature page. For these reasons, this Court, like the trial court, finds that the cover sheet was not necessary to establish the individual who signed the Petition possessed all the required information.

## IV. Validity of Signatures Collected

■ The District variously challenges the validity of the signatures as untimely collected, as being the signatures of non-residents of the District, as crossed out, blank, incomplete, duplicative, or illegible. This is a question of fact that this Court will not disturb absent an abuse of discretion or error of law.[9] Because this Court reviews the trial court's factual determinations for abuse of discretion, a brief review of the findings and arguments regarding the signatures is in order.

### A. Untimely Collected Signatures

The CSL requires that signatures be collected within sixty days of the date of the denial of the application by the school district. Section 1717–A(i)(2) of the CSL, 24 P.S. § 17–1717–A(i)(2). Capital does not dispute that fifteen signatures collected on April 26, 2006, more than sixty days after District denied the application, should be excluded for being untimely.[10] Further, lines 558, 560, and 976 have no date and it is not possible to determine

---

9. This Court's review of an order in a case in which the trial court has acted as the finder of fact is limited to determining whether trial court committed error of law or abused its discretion. *Penn's Grant Associates v. North-* *ampton County Board of Assessment Appeals,* 733 A.2d 23 (Pa.Cmwlth.1999).

10. Lines 226–240. Petition, R.R. at 195a.

when the signatures were obtained. It was agreed these are also invalid.

## B. Signatures of Non–Residents

The CSL requires that signatures obtained must be of residents of the school district to count toward the total. Section 1717–A(i)(4) of the CSL, 24 P.S. § 17–1717–A(i)(4). Capital does not dispute that fifty-one signatures must be excluded as those of non-residents.[11]

## C. Blank Lines and Crossed–Out Signatures

Blank lines and crossed out signatures were similarly excluded by the trial court. Capital does not dispute that nine crossed out signatures and two blank lines must be excluded.[12]

## D. Incomplete Lines

■■■■ The CSL requires that signers include their printed name, signature, address including city, borough, or township, with street number, and the date they signed. Section 1717–A(4) of the CSL, 24 P.S. § 17–1717–A(4). Some of the lines are incomplete according to the District because signers used ditto marks for their addresses, failed to include a city or simply listed a number or post office box in lieu of a street address. In *In re Nomination Paper of Nader*, 865 A.2d 8 (Pa.Cmwlth. 2004), this Court interpreted the Pennsylvania Election Code to hold that a ditto

mark was insufficient as a component of a signature line. *Id.* at 175.

In *Nader*, fraud and deception occurred on the part of the circulators and affiants. In examining an extraordinary number of signatures and faced with questionable, illegitimate, and obstinate behavior on behalf of those authorized on behalf of the Candidate, it was in the interest of justice in *Nader* to ensure that only complete signature lines were considered. Circulators had been motivated to use any mechanism available to boost the number of signatures gathered, and there was extensive documentation of fraudulent techniques. No fraud or deceit was alleged against Capital. Further, the Pennsylvania Election Code is neither controlling here, nor relevant. This Court again agrees with the trial court that ditto marks were sufficient.

The Petition here was governed by the CSL, not the Pennsylvania Election Code, particularly in light of the District's Transportation Supervisor, Connie Volk's, testimony on behalf of the District that a "[ditto mark] means that whatever the prior address or date was that they are saying that's the same."[13] Notes of Testimony (N.T.), August 28, 2006, at 98; R.R. at 118a.

Notwithstanding those lines necessary to be considered complete based on ditto marks, ten lines have incomplete street addresses, one less than indicated by the trial court.[14] Those signatures were invalid.

---

**11.** Lines 30, 55, 63, 75, 90, 301, 322, 348, 349, 361, 362, 365, 374, 375, 376, 378, 379, 380, 400, 447, 448, 474, 477, 485, 486, 488, 551, 595, 632, 633, 634, 635, 673, 696, 705, 714, 734, 746, 770, 801, 1051, 1052, 1097, 1102, 1104, 1105, 1124, 1132, 1166. Petition, R.R. 148a–249a.

**12.** Lines 383, 386, 769, 777, 808, 825, 903, 1046, and 1093 have lines through the signa-

tures. Lines 603 and 968 are blank. Petition, R.R. 148a–249a.

**13.** Volk's testimony established that certain addresses were outside the District.

**14.** Lines 106 (438–14), 558 (38–F), 559 (33–F), 673 (1618 West), 704 (26–G), 764 (address crossed out), 794 (Harrisburg), 813 (Hbg.), 974 (blank), and 1061 (P.O. Box 13061). R.R. 148a–249a. This Court holds that line

## E. Duplicative Signatures

■ Next the District argues that some of the signatures were invalid because they were completely or partially in the same hand. The District provided a handwriting expert, J. Wright Leonard (Leonard) who testified before the trial court. Leonard testified that eighty-six signatures were "whole line same hand," meaning the entire line was filled out by the same person. N.T. 110–111; R.R. at 130a–131a. Report of J. Wright Leonard, BCFE, CDE, 1–17; R.R. at 261a–277a, 287a. These consist mostly of pairs of lines that were allegedly filled in by the same person. Trial Court Opinion, (Trial Court Opinion) December 8, 2006, at 10. Leonard further testified that 129 of the lines were "partial line same hand," meaning that some part of the line but not all was duplicative. *Id.*

Leonard relied upon a photocopy of the Petition to perform her examination of the signatures, rather than the original which is usually preferred by experts in her field. N.T. at 120–21; R.R. at 140a–141a. She also only provided a report with conclusions as to her judgments, rather than including documentation with objective measurements or reasons for concluding that certain lines were written in the same hand. The trial court did not find Leonard's testimony credible, and personally examined the Petition, line by line, and found that only thirty-nine of these signatures were invalid as being in the same hand. Trial Court Opinion, at 10, fn. 13. This Court has reviewed the trial court's

conclusions based upon an abuse of discretion standard to determine whether the trial court erred in its fact-finding. This Court finds no error with the trial court conclusion that far fewer than the eighty-six signatures claimed to be "whole line same hand" by Leonard were duplicative. Based upon a review of the transcript of Leonard's testimony and the Petition itself, this Court finds no error with the trial court's conclusions that only thirty-nine signatures were insufficient because they were duplicative.[15] Because the trial court did not abuse its discretion, and because sufficient evidence existed to support the trial court's findings, this Court will not disturb the trial court's conclusion.

## F. Illegible Signatures

■ District argues that 107 illegible lines must also be stricken, based on the testimony of expert Leonard. Leonard's initial report found 111 lines were illegible. R.R. 261a–277a. During cross examination, Leonard explained that some of the lines she included as illegible were lines whose printed name she did not recognize as being a name. N.T. 124–132; R.R. 144a–152a. However, during this cross-examination, it came to light that she categorized at least four lines as illegible when a glance in the local phone book would have confirmed that the printed name correlated with the provided address. *Id.*

The trial court, based on Leonard's testimony, did not find her credible as a witness and did not exclude the 107 lines

---

842 contains a ditto mark for the street address, and is therefore sufficient.

15. Lines 8–9, 162–163, 174–175, 207–208, 274–275, 332–333, 370–371, 467–470, 519–520, 536–537, 566–567, 593–594, 632–635, 639–640, 663–664, 726–727, 812–814, 830–831, 832–833, 973–974, 1006–1010, 1016–1019, 1093–1094, 1099–1100, 1114–1115, 1119–1120. R.R. 148a–249a. This consti-

tutes thirty-nine signature lines that are insufficient, according to the trial court. Even if this Court were to discard all of the duplicative lines, as District contends, meaning all lines from each pair or set instead of validating the first line, only sixty-five lines would be excluded, and the Petition still has the requisite number of signatures.

District argues should have been stricken, and struck only five lines, 497, 498, 986, 1030, and 1031, based on illegibility. Because it was up to the trial court as the fact-finder to make credibility determinations regarding the challenges to the legibility of the signatures, this Court finds no error by the trial court that only five lines should be excluded because of illegibility.

This Court finds that the trial court committed no error in finding the Petition was sufficient to allow Capital to appeal the District's decision to deny Capital's charter application.[16] Further, this Court finds the trial court did not abuse its discretion in finding that the Petition was sufficient to allow the appeal.

Accordingly, this Court reverses with respect to the finding that signature line 842 is invalid. Otherwise, the order below is affirmed in all respects.

### ORDER

AND NOW, this 15th day of October, 2007, the order of the Court of Common Pleas of Dauphin County in the above captioned matter is reversed with respect to the finding that signature line 842 is invalid. The order of the Court of Common Pleas of Dauphin County is otherwise affirmed.

---

16. The trial court found 135 signatures of the Petition invalid, leaving 1,041 valid signatures, 41 more than necessary to qualify for the appeal. This Court finds that 136 signatures are valid, 42 more than necessary to qualify for the appeal. Specifically, signature line 842 is a valid signature line, as contrasted to the trial court's finding that it was not valid.