# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Applicants for Academy of   :
Business and Entrepreneurship   :
Charter School   :
  :
Appeal of:  School District of Lancaster   :   No. 221 C.D. 2016
  :
In Re: Application For Academy of   :
Business and Entrepreneurship Charter   :
School   :
  :
Appeal of: Academy of Business and   :   No. 1033 C.D. 2016
Entrepreneurship Charter School   :   Argued:  December 12, 2016

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER             FILED:  March 21, 2017

This matter involves two appeals from Orders of the Court of Common Pleas of Lancaster County (common pleas) concerning the Academy of Business and Entrepreneurship Charter School's (ABECS) Petition to Certify the Appeal (Petition) to the State Charter School Appeals Board (CAB).  The School District of Lancaster (School District) appeals common pleas' initial December 18, 2015 Order (2015 Order) granting the Petition, and ABECS appeals common pleas' subsequent June 17, 2016 Order (2016 Order) reversing its December 18, 2015

Order.[1]  Upon review, we affirm the 2016 Order and dismiss the School District's appeal of the 2015 Order as moot.

## I.     Procedural History

On November 13, 2013, ABECS submitted a charter school application to the School District pursuant to Pennsylvania's Charter School Law (CSL).[2]  After two public hearings on the application, the School District denied ABECS' application on February 18, 2014.

Section 17-A(i)(2) of the CSL limits appeals to the CAB to those applicants that can demonstrate public support for the creation of the charter school by obtaining the signatures of either 1,000 residents who live within the school district or two percent of the residents of the school district, whichever is less.  24 P.S. § 17-1717-A(i)(2).  Section 17-A(i)(5) of the CSL requires applicants who seek to appeal to the CAB to submit the signatures as a petition to the appropriate court of common pleas, which will determine the sufficiency of the petition.  24 P.S. § 17-1717-A(i)(5).  ABECS submitted the Petition containing 2,185 signatures to common pleas on July 3, 2014.  Attached to the Petition were affidavits from those individuals that circulated the Petition for signatures:  Ethan Vaughn, Dante Felipe, and Sothorn Buthdy Santiago.  The affiants stated, *inter alia*, that they are residents of the School District, that "the signers signed with full knowledge of the purpose of th[e] [P]etition[,]" and that "to the best of the affiant's knowledge and belief, the signers are residents of the [S]chool [D]istrict."  (R.R. at 129a-39a.)

---

[1] ABECS is the designated appellant before this Court.

[2] Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A – 17-1751-A.

The School District challenged the Petition by alleging that 1,514 signatures were invalid, bringing the Petition below the 1,000 signature threshold. Among the School District's objections were that the signatures submitted by Mr. Felipe were invalid because Mr. Felipe was not a resident of the School District at the time he collected the signatures, and that some of the information on the Petition was entered by someone other than the signer. (Common Pleas Op., Dec. 18, 2015 (2015 Op.), at 2.)

After three days of hearings, common pleas issued an Order on December 18, 2015, finding that ABECS submitted 1,066 valid signatures. Of particular relevance to this appeal, common pleas struck all 535 signatures collected by Mr. Felipe on the grounds that Mr. Felipe was a resident of York, not Lancaster, at the time he collected the signatures. (2015 Op. at 3-4.) Common pleas found that:

> Mr. Felipe maintained an address in York as a requirement of his parole status. Furthermore, Mr. Felipe reported to his parole officer that his residence was in York. ABECS contends that although Mr. Felipe had a second residence in York County, the York residence was kept for purposes of parole, and Mr. Felipe mainly lived at 124 Dauphin Street in Lancaster. However, "residence" is evidenced by a person's physical presence in a particular place. Mr. Felipe admittedly reported to his parole officer that he was living in York during the time he was collecting the signatures in question and when he signed the affidavits in support of the [P]etition[].

(Id. at 4.) Common pleas also struck 262 signatures where the date following a signature was entered by someone other than the signer. (Id. at 5-6.)

The School District filed a post-trial motion on December 29, 2015. ABECS responded by filing its own post-trial motion on January 8, 2016. On January 20, 2016, before common pleas could act on the post-trial motions, the School District filed a Notice of Appeal to this Court. Common pleas issued an

3

order on January 29, 2016, concluding that the School District's Notice of Appeal divested it of jurisdiction to consider the post-trial motions. (Common Pleas Order, Jan. 29, 2016, R.R. at 346a.)

The School District filed an Application for Relief in this Court on February 22, 2016, seeking a determination that common pleas had jurisdiction to decide the post-trial motions. The following day, February 23, 2016, a letter was entered into the docket by School District stating that ABECS did not oppose the School District's Application for Relief. This Court issued an order on February 29, 2016, granting the Application for Relief and stating, in relevant part, as follows:

> NOW, February 29, 2016, upon consideration of appellant's "Application For Determination That [The Court of Common Pleas of Lancaster County (trial court)] Has Jurisdiction To Decide Timely-Filed Post-Trial Motions or, in the alternative, An Order Directing Or Authorizing the Trial Court To Resolve Pending Post-Trial Motions," the Application is granted, and the trial court is authorized pursuant to Pa. R.A.P. 1701(b)(5) to dispose of the parties' post-trial motions. The trial court shall transmit the original record to the Commonwealth Court, including the trial court's order/opinion disposing of the post-trial motions, within ninety[] (90) days of the date of this order.
>
> . . .
>
> It further appearing that post-trial motions may not be filed in matters governed exclusively by petition practice, see Pa. R.C.P. No. 227.1, Note, the parties are further directed to address the propriety of the filing of post-trial motions in their principal briefs on the merits.
>
> Jurisdiction retained.

(Order, Feb. 29, 2016 (first alteration in original).)

In response to the above order, common pleas issued an opinion on May 26, 2016 (2016 Op.), disposing of the post-trial motions. In its 2016 Opinion, common pleas conceded that it made a series of errors in its 2015 Opinion and Order. (2016

4

Op., at 2-6.) Of relevance here, common pleas noted that in its 2015 Order, it only struck signatures where the date of signing was added by someone other than the signer if the signature was specifically identified by the School District. Common pleas reconsidered this decision and held:

> The Court concedes it made an error in not considering th[e signatures not identified by the School District] because there is no presumption of validity regarding the signatures. To the contrary, the Court believes that the School District is correct that the Court has an affirmative duty to analyze the [P]etition, particularly so when many of the flaws are so glaring. This would be consistent with the intent of the statute in that there must be sufficient community support to support certifying the [P]etition to the [CAB]. An invalid signature, for whatever reason, does not reflect community support.

(Id. at 3). Common pleas found that "[a] review of the entire [P]etition shows a pattern of pre-entering dates and/or municipality by the circulator or changing information by the circulator" and, as such, "there is no reliable indication when many of these [signatures lines on the Petition] were actually signed." (Id. at 4.) As a result of its reconsideration, common pleas invalidated an additional 505 signatures, thus bringing the total invalidated signatures to 766[3] where the sole

---

[3] There appears to have been some mathematical miscalculations. Common pleas struck 262 signatures in the 2015 Opinion because "either the date or the date and municipality, were not entered by the sign[er]." (2016 Op. at 3.) Common pleas acknowledged a mathematical miscalculation and adjusted the number to 261 in the 2016 Opinion. (Id.) Based on its independent review, common pleas struck 577 signatures where the date was entered by someone other than the signer. (Id. at 3-4.) Of those 577 signatures, common pleas noted that 72 signatures were struck for other reasons and calculated the number struck for a lack of a date written by the signer as 502. (Id.) However, 72 subtracted from 577 is 505, not 502. We therefore adjust that calculation here, adding the 261 signatures struck in the 2015 Opinion, as amended by the 2016 Order, to the 505 signatures struck in the 2016 Opinion, which totals 766 signatures struck because the date of signing was entered by someone other than the signer. The miscalculation had no effect on the result.

error was that the date of signing was entered by someone other than the signer. (Id. at 4.) Common pleas also determined not to revisit its decision on the signatures submitted by Mr. Felipe because:

> [i]t is clear that [Mr.] Felipe was a resident of a half-way house in York as a condition of his parole from the Pennsylvania Board of Probation and Parole. If he lived, as he said he did, in Lancaster, he would be violating his parole. The only evidence of any residence in Lancaster is oral testimony. There was no documentary evidence, (i.e., lease, deed, driver's license, voter registration), that would actually show whether he truly had a residence in Lancaster at the time.

(Id. at 7.) Based on these conclusions, and others not appealed herein, common pleas held that ABECS only submitted 580 valid signatures, far below the 1,000 required to submit the Petition to the CAB. (Id. at 9.) Common pleas issued the 2016 Order granting the School District's post-trial motion and rejecting the Petition on June 17, 2016.

ABECS appealed the 2016 Order to this Court. We issued a Memorandum and Order on July 14, 2016, noting that both the School District and ABECS filed timely appeals – the School District from common pleas' 2015 Order and ABECS from common pleas' 2016 Order. We stated that "[b]ecause we have yet to determine whether the filing of post-trial motions was proper, it is unclear which of these orders is the final order subject to appeal." (Memorandum and Order, July 14, 2016.) We designated ABECS as the appellant and ordered the parties to "address the propriety of filing of post-trial motions in their principal briefs on the merits."[4]

---

[4] Our review of an order where a court of common pleas acted as a fact finder is limited to "determining whether the trial court abused its discretion, committed an error of law, or **(Footnote continued on next page…)**

## II.     Procedural Issues Under Review

### A.     Whether the 2015 Order was a Final Order

We must determine whether it is the School District's appeal of the 2015 Order or ABECS' appeal of the 2016 Order that is before this Court. ABECS argues that this Court lacks jurisdiction over the School District's appeal of the 2015 Order because it is not a final order as defined by Rule 341 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 341. Rule 341(b)(1) defines a "final order," in relevant part, as any order that "disposes of all claims and of all parties." Pa. R.A.P. 341(b)(1). ABECS argues that the 2015 Order did not put the parties out of court but rather moves the appeal to the next stage in the process – review by the CAB.

The School District argues that the 2015 Order is final and immediately appealable to this Court, as the CAB cannot review the decision of common pleas regarding the sufficiency of the signatures. The CAB's only role, according to the School District, is to review a decision made by a local board of directors. Section 17-A(i)(1) of the CSL, 24 P.S. § 17-1717-A(i)(1). As such, both parties are put out of court with regard to whether the Petition contains sufficient signatures. The School District points to this Court's review of a similar appeal in <u>Capital Academy Charter School v. Harrisburg School District</u>, 934 A.2d 189 (Pa. Cmwlth. 2007), and in an unreported decision, <u>In re: Petition to Appeal the Denial of the Charter School Application of Roberto Clemente Elementary Charter School</u>, (Pa. Cmwlth., No. 413 C.D. 2012, filed August 10, 2012), where this Court

---

(continued…)

whether its decision is supported by substantial evidence." <u>RAS Dev. Corp. v. Fayette Cnty. Bd. of Assessment Appeals</u>, 704 A.2d 1130, 1133 (Pa. Cmwlth. 1997).

7

reviewed a court of common pleas' order on the sufficiency of a petition without expressing any concerns that the Court lacked jurisdiction.

We agree with the School District that the 2015 Order is a final order. Under the CSL's scheme, a charter school appeal petition filed in common pleas is a separate action from a charter school application, and the CAB may only review a school board's decision on a charter school application. See 24 P.S. § 17-1717(i)(6) (providing that "*the decision made by the local board of directors* shall be reviewed by the appeal board on the record as certified by the local board of directors" (emphasis added)). Thus, because the proceeding on the charter school appeal petition is a separate action from the appeal of the charter school application to the CAB, the 2015 Order addressing the charter school appeal petition was final and appealable to this Court.

### B.     Post-Trial Motions

We next address whether common pleas erred in considering the post-trial motions filed after the 2015 Order. ABECS contends that once common pleas determined that the Petition contained a sufficient number of signatures in the 2015 Order, jurisdiction immediately passed to the CAB, and, as a result, common pleas had no jurisdiction to rule on post-trial motions. ABECS also argues that the post-trial motions were not appropriate because the matter is governed by petition practice, and post-trial motions are not permissible in petition practice pursuant to the Note following Rule 227.1(c) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 227.1(c).

In response, the School District argues that its post-trial motion was appropriate because there was a trial on the matter, and the proceeding is not

8

governed by the rules of petition practice. The School District contends that post-trial motions are appropriate when there is a trial, and, although the Rules of Civil Procedure do not define the term "trial," courts have held that a trial occurs when a court is presented with evidence and makes findings of fact and conclusions of law based on that evidence. The School District notes that evidence was presented to common pleas in the course of a three-day hearing in the form of fact witnesses, expert testimony, affidavits, and exhibits. At the close of evidence, both parties submitted proposed findings of fact and conclusions of law for common pleas' consideration.

The School District argues that the CSL does not require the proceedings to be governed by petition practice and that the rules of petition practice apply in a limited number of circumstances, such as in "an application to strike and/or open a default judgment or a judgment of non pros" or in a proceeding "designated by local rule, numbered Local Rule 206.1(a) . . . ." Rule 206.1 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 206.1. The School District points to the relevant Lancaster County Local Rule, which defines a petition as "a request which seeks relief ancillary to a given cause of action and which avers facts not of record." Rule 206.1(a) of the Lancaster County Rules of Civil Procedure, L.C.R.C.P. No. 206.1(a). The School District contends that because the petition at issue "d[oes] not seek relief 'ancillary' to [the] given cause of action," but was the cause of action, petition practice does not apply. (Sch. Dist.'s Br. at 20.)

First, common pleas did not lose jurisdiction to consider any motions after it certified the Petition. "A trial court always has the authority to reconsider its own judgment." Moore v. Moore, 634 A.2d 163, 167 (Pa. 1993). We find no provision of the CSL that divests a court of common pleas of its authority to reconsider or

9

correct errors in its decisions before the court is divested of jurisdiction through a timely appeal, and ABECS provides no authority supporting its argument.

Next, we consider whether the matter is governed by petition practice, and relatedly, whether post-trial motions are required or permitted. Rule 227.1(c) of the Pennsylvania Rules of Civil Procedure states, in pertinent part:

> (c) Post-trial motions shall be filed within ten days after
>
>> (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or
>>
>> (2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

Pa. R.C.P. No. 227.1(c). "The purpose for Rule 227.1 is to provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review." Chalkey v. Roush, 805 A.2d 491, 494 n.9 (Pa. 2002) (citation omitted). The Note to Pa. R.C.P. No. 227.1(c) states, in relevant part:

> *Note:* A motion for post-trial relief may be filed following a trial by jury or a trial by a judge without a jury pursuant to Rule 1038. A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial. See U.S. Nat['l] Bank in Johnstown v. Johnson, 487 A.2d 809 (Pa. 1985).
>
> *A motion for post-trial relief may **not** be filed to matters governed exclusively by the rules of petition practice.*

Pa. R.C.P. No. 227.1(c), Note (emphasis added).

To determine whether a matter is governed by petition practice, we examine how the procedure is described in the statute under which the petition was filed. For example, in In re K.L.S., 934 A.2d 1244, 1245 (Pa. 2007), the Supreme Court

10

addressed whether post-trial motions were required to preserve issues for appeal under the Mental Health Procedures Act (MHPA).[5] The petitioner in that case was involuntarily hospitalized and petitioned a court of common pleas for review of his hospitalization. Id. at 1246. The court of common pleas denied the petition, and the petitioner filed an appeal to Superior Court, which quashed the appeal on the basis that the petitioner did not file post-trial motions. Id. On appeal, the Supreme Court assessed how the MHPA describes the review process. Id. at 1246-48. Sections 109(b), 303(g), and 304(b) of the MHPA all state that a person has the right to "petition" the court of common pleas for review. Id. at 1246-47 (citing 50 P.S. §§ 7109(b), 7303(g), and 7304(b)). Because the statutory procedure referred to the process as a "petition," the Supreme Court held that "[p]roceedings pursuant to the MHPA are governed by the rules of petition practice. The Note to Pa R.C.P. [No.] 227.1(b) therefore applies to those proceedings, and post-trial motions are not required to preserve issues for appeal." Id. at 1247 (citations omitted); see also Coco Bros., Inc. v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, 608 A.2d 1035 (Pa. 1992) (post-trial motions are not required or permissible in action to enforce a judgment against a school board pursuant to Section 611 of the Public School Code of 1949, 24 P.S. § 6-611).

Here, we examine the procedures as described by the CSL. Section 17-A(i) of the CSL provides, in relevant part:

> (i)(1) The appeal board shall have the exclusive review of an appeal by a charter school applicant, or by the board of trustees of an existing charter school, of a decision made by a local board of directors not to grant a charter as provided in this section.

---

[5] Act of July 9, 1976, P.L. 817, as amended, 50 P.S. §§ 7101 – 7503.

11

(2) In order for a charter school applicant to be eligible to appeal the denial of a charter by the local board of directors, the applicant must obtain the signatures of at least two per centum of the residents of the school district or of one thousand (1,000) residents, whichever is less, who are over eighteen (18) years of age.

. . .

(5) If the required number of signatures are obtained within sixty (60) days of the denial of the application, the applicant *may present the petition to the court of common pleas* of the county in which the charter school would be situated. The court shall hold a hearing only on *the sufficiency of the petition*. The applicant and local board of school directors shall be given seven (7) days' notice of the hearing. The court shall issue a decree establishing *the sufficiency or insufficiency of the petition*. If the petition is sufficient, the decree shall be transmitted to the State Charter School Appeal Board for review in accordance with this section. Notification of the decree shall be given to the applicant and the local board of directors.

24 P.S. § 17-1717-A(i)(1)-(2), (5) (emphasis added). Section 17-A of the CSL clearly describes the process in terms of a petition. Accordingly, pursuant to K.L.S. and Coco Brothers, the process is governed by petition practice, and no post-trial motions are permitted.

### C. Which Order is Under Review

Having concluded that the 2015 Order was final and that post-trial motions were not permitted, we now consider whether it is the 2015 Order or the 2016 Order that is properly under review. The School District argues that the 2016 Order is the correct order under review because even if the matter is governed by petition practice and no post-trial motions were permitted, this Court authorized common pleas to address the motions and the School District explicitly requested that common pleas consider its post-trial motion as one for reconsideration. Under Rule 1701(b)(3) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P.

12

1701(b)(3) and Rule 1930.2 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1930.2, a court of common pleas may grant a motion for reconsideration within 30 days, and once granted, the trial court has another 120 days to issue a new decision. The School District acknowledges that common pleas did not grant the motion within 30 days, but contends that because this Court directed common pleas to decide the motion in its February 29, 2016 Order, reconsideration was appropriate.

This Court generally treats improperly filed post-trial motions as motions for reconsideration. See Pedersen v. S. Williamsport Area Sch. Dist., 471 A.2d 180, 182 (Pa. Cmwlth. 1984) (where filing of exceptions was not proper, the exceptions were treated as a petition for reconsideration that did not toll the appeal period); see also G. Darlington, K. McKeon, D. Schuckers & K. Brown, Pennsylvania Appellate Practice § 302:28 (West 2015) ("Generally, the improper filing of . . . a post-trial motion to an order that is immediately appealable will be treated as a motion for reconsideration, which does not stay the appeal period."). We do so here.

Common pleas did not act on the motions prior to the School District timely filing its Notice of Appeal of the 2015 Order to this Court, which removed common pleas' jurisdiction over the motions pursuant to Rule 1701(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1701(a).[6] However, this

---

[6] Rule 1701(a) of the Pennsylvania Rules of Appellate Procedure provides:

**(a) General rule.** Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

Pa. R.A.P. 1701(a).

13

Court issued the February 29, 2016 order, which granted the School District's unopposed Application for Relief and authorized common pleas to dispose of the parties' motions. Under Rule 1701(b)(5) of the Pennsylvania Rules of Appellate Procedure, common pleas is authorized to "[t]ake any action directed or authorized on application by the appellate court." Pa. R.A.P. 1701(b)(5). Consistent with this Court's February 29, 2016 order, common pleas disposed of the motions in the 2016 Order, reconsidering its 2015 Order resulting in its reversal.[7]

Thus, before us on appeal is ABECS' appeal of the merits of the 2016 Order.

### D. ABECS' Appeal of the 2016 Order

ABECS argues that common pleas erred by: (1) striking signatures on the Petition where the date was entered by someone other than the signer; and (2) striking the signatures collected by Mr. Felipe on the grounds that Mr. Felipe was not a resident of the School District. We shall address these two arguments in turn.

### 1. Dates Entered by Someone Other Than the Signer

ABECS argues that common pleas' decision to strike 766 signatures where the only error was that the signers did not personally include a date is contrary to the plain language of the CSL and does not serve the purpose of the CSL. ABECS contends that its reading of the statute is consistent with this Court's opinion in Capital Academy, where this Court held that "ditto marks," which are used to show that the line below is intended to reflect the same information as the line above, did

---

[7] ABECS filed its own post-trial motions and did not object to this Court ordering common pleas to consider the motions. ABECS does not argue on appeal that we should consider the 2015 Order instead of the 2016 Order. Rather, ABECS argues that this Court lacks jurisdiction over both Orders as neither are final orders subject to appeal. We addressed this issue *supra*.

14

not render the signatures invalid. Capital Acad., 934 A.2d at 196. In response, the School District contends that the plain language "mandates that a person signing the petition, and no one else, is to enter the required information." (Sch. Dist.'s Br. at 25.) The School District further argues that the language of Section 17-A(i)(3) of the CSL should be interpreted in the same manner as the Election Code, 25 P.S. §§ 2601–3591, where the Pennsylvania Supreme Court has held that an elector must add the date in his own hand. In re Nomination Petition of Silcox, 674 A.2d 224, 225 (Pa. 1996).

> Section 17-A(i)(3) of the CSL provides, in relevant part:

> Each person signing a petition to appeal denial of a charter under clause (2) *shall declare* that he or she is a resident of the school district which denied the charter application and *shall include* his or her printed name; signature; address, including city, borough or township, with street and number, if any; and the date of signing.

24 P.S. § 17-1717-A(i)(3). Using plain grammatical rules, the statute imposes two requirements on each signer: (1) to *declare* that he or she is a resident of the school district; and (2) to *include* certain information on the petition. Id.

The signature pages on the Petition used by ABECS are derived from a template published by the Department of Education.[8] The top of each signature page reads:

> I declare that I am a resident of the **School District of Lancaster**, that I am over eighteen (18) years of age and that I am signing the Petition to Appeal the **February 18, 2014** decision of **the School District of Lancaster Board of School Directors** to reject the application of **the Academy of Business and Entrepreneurship Charter School** to

---

[8] The bottom of each template page contains the code "PDE-377." (See, e.g., R.R. at 13a.) As we noted in Capital Academy, PDE-377 means "Pennsylvania Department of Education (PDE) form PDE-377." Capital Acad., 934 A.2d at 192.

15

establish a charter school in [the] School District of Lancaster . . . . I knowingly include my name, address and signature on the Petition to Appeal **the School District of Lancaster** Board of School Directors' Rejection of the Application for a Charter School for **the Academy of Business and Entrepreneurship Charter School**.

(R.R. at 13a (emphasis in original).) Below the declaration are signature lines with distinct columns titled: "Date"; "Printed Name"; "Signature"; "Street Address, including number, if any"; and "City, Borough, or Township." (Id.) Under each column is a series of rows where the information for each signer is to be entered. (Id.)

It is not in dispute that, by signing the Petition, the signers satisfied the *declare* requirement. At issue is what the General Assembly intended when it provided that "[e]ach person signing a petition . . . shall include . . . the date of signing."[9]

---

[9] "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). We must construe "[w]ords and phrases . . . according to rules of grammar and according to their common and approved usage[.]" 1 Pa. C.S. § 1903(a). "General words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa. C.S. 1903(b). Further:

> [i]n ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:
>
>> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
>>
>> (2) That the General Assembly intends the entire statute to be effective and certain.
>>
>> (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

**(Footnote continued on next page…)**

16

By providing that "each person signing a petition … shall include . . ." in Section 17-A(i)(3), the General Assembly used the active voice, meaning that the subject of the sentence is the entity performing the action. See Commonwealth v. Smyrnes, __ A.3d __, __ (Pa., No. 725 CAP 2017, filed Feb. 22, 2017), slip op. at 21-22 (interpreting the intent of the General Assembly through assessing the use of active or passive voice). The use of this sentence structure indicates that the General Assembly intended to put the responsibility on the signer to "include" the information. Webster's Dictionary defines "include," relevantly, as: "**2a**: to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate . . . [.]" Webster's Third New International Dictionary 1143 (2002). Thus, we interpret Section 17-A(i)(3) as putting the responsibility to place or list the date of signing on the petition on the person signing the petition.[10] Further,

---

**(continued…)**

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

(5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa. C.S. § 1922.

[10] This interpretation does not shed definitive light on whether the signer must include the date of signing *in his or her own hand*, or whether a signer may indirectly "include" (i.e., place, list, or take in) the date on the petition by authorizing the date to be placed on the petition by someone else. However, we need not decide this issue as ABECS does not argue and has not presented evidence that the signer authorized the circulator to add the date of signing. In fact, the evidence shows otherwise. Mr. Vaughn testified in his deposition that he entered the date on the petitions "often." (Vaugh Dep., Sch. Dist. Hr'g Ex. 28, at 92.) He further testified that he could not remember whether he wrote the dates in before or after he obtained the signatures. (Id.) No testimony was presented showing that the circulators told the signers that the date was pre-entered or that the circulators obtained the signers' approval before writing the date on the signers' behalf.

because the General Assembly used the word "shall" in Section 17-A(i)(3), we interpret this responsibility as mandatory. See Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997) ("[b]y definition, 'shall' is mandatory"). Although there are circumstances where the context of the sentence raises doubt on the precise meaning of the term "shall," the Supreme Court requires that we interpret the term as mandatory when a statute is, like here, unambiguous. Koken v. Reliance Ins. Co., 893 A.2d 70, 81 (Pa. 2006).

This interpretation is consistent with our holding in Capital Academy. There, we held that a signature to a charter school appeal petition is not rendered invalid under Section 17-A(i)(3) of the CSL when a signer includes "ditto marks" on the petition instead of his or her complete address because no fraud or deceit was alleged against the charter school and the testimony showed that school district understood what the ditto marks were intended to convey. Capital Acad., 934 A.2d at 196. There was no allegation in Capital Academy that the ditto marks were written by anyone other than the signer. See id. (stating that the school district objected "because *the signers* used ditto marks for their addresses") (emphasis added). Our interpretation is also consistent with Capital Academy in that, like in Capital Academy, we do not rely on a provision of the Election Code to interpret the CSL, even if the CSL is very similar in language to the Election Code. Interpretations of the Election Code are often *sui generis*. Therefore, common pleas did not err in striking the 766 signatures to the Petition where someone other than the signer entered the date of signing.

### 2. Signatures Collected by Mr. Felipe

ABECS next argues that common pleas erred by striking the signatures collected by Mr. Felipe on the basis that he was not a resident of the School

18

District. ABECS argues that the evidence shows that Mr. Felipe satisfies the CSL's residency requirement for affiants. ABECS contends that the term "resident" is not defined in the CSL and should be interpreted by its common usage. According to ABECS, there is a difference between the terms "domicile" and "residence," and it is well settled that while a person has only one domicile, or "legal residence," a person can have more than one residence. McCarthy v. Phila. Civil Serv. Comm'n, 339 A.2d 634, 636 (Pa. Cmwlth. 1975).

ABECS points to evidence showing that while Mr. Felipe was required to maintain a residence in York County as a condition of his parole at the time he gathered signatures, the evidence also shows that Mr. Felipe retained and resided in his apartment in Lancaster County. Mr. Felipe testified that he considered Lancaster to be his residence, that his driver's license supplies a Lancaster address, and that the manager of the signature gathering process for ABECS, Mr. Oksuz, testified that he met with Mr. Felipe at Mr. Felipe's Lancaster residence.

Section 17-A(i)(4) of the CSL addresses the requirements of an affiant. Among the requirements of the affiant is that he or she "is a resident of the school district referred to in the petition." 24 P.S. § 17-1717-A(i)(4)(i). The term "resident" is not defined in the CSL and should be defined utilizing the "classic" definition. In re Residence Hearing Before Bd. of Sch. Dirs., Cumberland Valley Sch. Dist., 744 A.2d 1272, 1275 (Pa. 2000). According to the Supreme Court: "'in strict technical terminology a *habitation* may be defined as an abode for the moment, *residence* a tarrying place for some specific purpose of business or pleasure, and *domicile* the fixed, permanent, final home to which one always intends to return.'" Id. (quoting Lesker Case, 105 A.2d 376, 380 (Pa. 1954) (emphasis in original)). Courts of this Commonwealth have further noted that the

term "residence," when not clarified with refining words such as "permanent" or "legal," has a more transitory meaning than if those refining words are used. Krager v. Foremost Ins. Co., 450 A.2d 736, 738 (Pa. Super. 1982).

ABECS is correct that a person may maintain multiple residences but can only have one domicile. McCarthy, 339 A.2d at 635. Common pleas acknowledged this distinction by stating: "Domicile is that place where people have their true, fixed and permanent home and principal establishment, and to which whenever they are absent they have the intention of returning. 'Residence,' in contrast, is 'a factual place of abode' evidenced by a person's physical presence in a particular place." (Dec. 2015 Op. at 3.) Neither of common pleas' opinions reveals that the court did not understand that a person may maintain multiple residences.

Finding no error of law, we next assess whether common pleas abused its discretion and whether common pleas' finding that Mr. Felipe resided at a single residence, a halfway house in York County, at the time he collected signatures is supported by substantial evidence. Mr. Felipe testified that he was incarcerated from 2000 until he was paroled in 2013. (R.R. at 173a.) After violating his parole, Mr. Felipe was sent to live in a halfway house in York. (Id. at 174a.) In order to be released from the halfway house, Mr. Felipe was required to establish a residence in York. (Id. at 172a.) Mr. Felipe further testified that while he had a residence in both York and Lancaster at the time he collected the signatures, he told his parole officer that he resided in York. (Id. at 189a.) When asked if he ever told his parole officer that he was using the Lancaster address, Mr. Felipe answered: "Of course not. You can't have two addresses." (Id. at 189a-90a.) Mr. Felipe further testified that he "think[s]" his driver's license lists his Lancaster

20

address as his official address, but he did not enter his license into evidence. (Id. at 163a.)

Common pleas explained in its 2016 Opinion that its finding is supported by evidence showing that Mr. Felipe was required to reside in York as a condition of his parole and that "[t]he only evidence of [Mr. Felipe's] residence in Lancaster is oral testimony." (2016 Op. at 7.) Common pleas further noted that Mr. Felipe was a resident of the York County Prison at the time of the hearing and for a number of months prior. (Id.) Mr. Felipe did not submit any documentary evidence showing that he resided in the School District. As common pleas' finding is supported by substantial, credible evidence, we will not disturb its finding. Accordingly, we conclude that common pleas did not abuse its discretion by striking all the signatures on the pages for which Mr. Felipe served as affiant.

## E. CONCLUSION

For the foregoing reasons, we affirm common pleas' 2016 Order and dismiss School District's appeal of common pleas' 2015 Order as moot.

_____
**RENÉE COHN JUBELIRER,** Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re:  Applicants for Academy of Business and Entrepreneurship Charter School | : | |
| | : | |
| Appeal of:  School District of Lancaster | : | No. 221 C.D. 2016 |
| | : | |
| In Re: Application For Academy of Business and Entrepreneurship Charter School | : | |
| | : | |
| Appeal of: Academy of Business and Entrepreneurship Charter School | : | No. 1033 C.D. 2016 |

## O R D E R

**NOW**, March 21, 2017, the order of the Court of Common Pleas of Lancaster County at 1033 C.D. 2016, is hereby **AFFIRMED**.  The appeal of the School District of Lancaster at 221 C.D. 2016 is **DISMISSED** as moot.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge